UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TERRY CARDARO, ET AL            *            CIVIL ACTION

VERSUS                          *            NO: 05-2684

AEROJET GENERAL CORPORATION,    *            SECTION: "D"(4)
ET AL

**ORDER AND REASONS**

Before the court is the **Motion to Remand** (Doc. No. 35).filed

by Plaintiffs, Terry Cardaro, et al. [1] Defendant, Crane Company,

Inc. (Crane), the removing defendant, filed a reply brief. General

Electric Company (one of numerous defendants named in Plaintiffs'

state court Petition), and Foster Wheeler Energy Corporation (named

as an additional Defendant in Plaintiffs' Amended Petition which

was filed after the matter was removed from state court and before

a ruling was made on Plaintiffs' Motion to Remand) each filed a

memorandum in opposition. The motion, set for hearing on

Wednesday, August 25, 2010, is before the court on briefs, without

---

[1]     Plaintiffs' motion is styled "Plaintiffs' Emergency Motion for Remand, and in the Alternative Motion for Severance and Remand," and it was timely filed on July 25, 2005. (Doc. No. 35). Disposition of this motion has been unfortunately delayed for an inordinate amount of time due at least in part to the procedural quagmire of this case through the MDL court and transfer back to this court. (*See* footnote 2, *infra*).

oral argument.[2]  Now, having considered the memoranda of counsel,
the record, and the applicable law, the court finds that the motion

---

[2]      The court previously noted that the underlying state court matter was removed to this court in two separate removal procedures: (1) removal by Defendant, Crane Company, Inc. on June 29, 2005 (and given Civil Action No. 05-2684 in this court); and (2) removal by Defendant, Buffalo Pumps, Inc. on June 30, 2005 (and was given Civil Action No. 05-2709 in this court). (*See* Order, Doc. No. 67 at n. 2). Because the two actions, Nos. 05-2684 and 05-2709, were duplicative, this court dismissed the higher numbered action, Civil Action No. 05-02709 [on August 17, 2005 by Order, Doc. No. 13 in No. 05-2709].

Plaintiffs filed their Motion to Remand (in No. 05-2684) on July 25, 2005. No motion to remand was filed in No. 05-2709.

On November 22, 2005, this court had stayed the resolution of Plaintiffs' Motion to Remand pending transfer to the Eastern District of Pennsylvania and possible consolidation with MDL No. 875. (*See* Order, Doc. No. 67, entered on November 22, 2005). The case was then transferred to the MDL court, where Plaintiffs filed a First Amended Petition. Ultimately, the MDL panel sent the case back to this court. (Docs. Nos. 70 & 129). The court then held several conferences to discuss joinder of parties and after issues were joined, the court ultimately set a Trial date, with various attendant cut-off dates. In this court, Plaintiffs have voluntarily dismissed various Defendants and the court has granted unopposed Motions for Summary Judgment filed by various other Defendants. Defendant Leslie Controls recently filed for bankruptcy protection. A limited number of Defendants remain, and they include Crane, General Electric, Foster Wheeler.

On July 14, 2010, the following motions had been set for hearing: (1) Crane's Motion for Summary Judgment (Doc. No. 350); (2) General Electric's Motion for Summary Judgment (Doc. No. 357); (3) Plaintiffs' Motion for Leave to File Amended Pleading (Doc. No. 359); (4) Plaintiffs' Motion to Strike the Testimony of James Crapo, MD (Doc. No. 364); (5) Crane's Motion to Exclude the "Each and Every Exposure" opinion (Doc. No. 367); (6) General Electric's and Foster Wheeler's Motion to Extend Deadlines (Doc. No. 374); and (7) Foster Wheeler's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. No. 375). In reviewing these motions, the court *sua sponte* questioned its subject matter jurisdiction, and instructed counsel for Plaintiffs to advise the court if the MDL court (i.e., the United States District Court for the Eastern District of Pennsylvania, *In re: Asbestos Products Liability Litigation*, MDL No. 875) ruled on Plaintiffs' Motion for Remand, and in the Alternative, Motion for Severance and Remand (Doc. No. 35).

Counsel for Plaintiffs advised the court (on July 14, 2010) that the MDL court did <u>not</u> rule on Plaintiffs' Motion for Remand, and in the Alternative, Motion for Severance and Remand (Doc. No. 35). (*See* Plaintiff's letter dated July 14, 2010, Doc. No. 436). The court then, *sua sponte*, set Plaintiffs' Motion for Remand (Doc. No. 35) for hearing on Wednesday, August 25, 2010, and the court continued without date the July 14, 2010, hearing date of the motions listed in the preceding paragraph. Finally, the court continued without date the Pre-Trial Conference (which had been set on Wednesday, August 4, 2010 at 2:00 p.m.) and the Trial (which had been set to begin on Monday, September 13, 2010).

should be granted because this court lacks subject matter jurisdiction.

## I.  Background

Plaintiffs initially filed suit in Civil District Court for the Parish of Orleans, State of Louisiana, against numerous Defendants alleging that Plaintiff Terry Cardaro contracted lung cancer due to exposure to asbestos.  Plaintiffs specifically allege that:

> In connection with Terry Cardaro's work as a mechanic/welder at various facilities owned and operated by Louisiana Power & Light Company (n/k/a Entergy Louisiana, Inc.) in or about 1977 through 1982, and as a Welder Tacker for Equitable Equipment Company in 1969.  Plaintiff suffered exposure to asbestos and asbestos-containing products designed, manufactured, sold and/or supplied and/or maintained by defendants.

(Original Petition at ¶4).

Purportedly based on Plaintiff Terry Cardaro's land-based employment, Plaintiffs sued a group of "Manufacturer Defendants," Entergy Louisiana, Inc. (formerly Louisiana Power & Light Company), and Equitable Equipment Company (formerly Equitable Shipyards, LLC). (*Id*. at ¶¶15, 40, 53).

Plaintiffs also sued another group of defendants alleged to be "Naval Equipment Manufacturers" (*id*. at ¶20), who allegedly manufactured, produced, designed, or otherwise put into the stream

of commerce asbestos-containing products which caused injuries to Plaintiff. (*Id* at ¶23). But Plaintiffs do not allege that Plaintiff Terry Cardaro served in the Navy or was exposed to asbestos products while serving and/or working in the Navy or on Naval vessels, and they do not make any allegations about specific naval vessels or specific products and equipment manufactured by any of the alleged "Naval Equipment Manufacturers."[3] In Plaintiffs' original Petition filed in state court, the group of "Naval Equipment Manufacturers" includes, *inter alia*, Crane and General Electric. (*Id*.).[4] Foster Wheeler was not added as a "Naval Equipment Manufacturer" Defendant until Plaintiffs filed their Amended Petition while the case was pending in the MDL court; at that time, Plaintiffs' Motion to Remand, which had been filed before the case was transferred to the MDL court, had not been ruled upon.

According to Plaintiffs' allegations set forth in their

---

[3] On June 22, 2010, Plaintiffs filed a Motion for Leave to File Second Amended Complaint. In their proposed Second Amended Complaint, Plaintiffs seek to add exposure facts related to Terry Cardaro's alleged service in the Navy. (*See* Plaintiffs' Motion to File Second Amended Complaint, Doc. No. 359). The court has stayed disposition of Plaintiffs' Motion to File Second Amended Complaint in light of Plaintiffs' Motion to Remand. (*See* footnote 2, *supra*).

[4] In their proposed Second Amended Complaint (which is subject of Plaintiffs' stayed Motion for Leave to File to file same), Plaintiffs also seek to add allegations that Terry Cardaro was exposed to General Electric-manufactured asbestos containing products at Louisiana Power and Light. Those claims were not included in Plaintiffs' original Petition (filed in state court) or in Plaintiffs' First Amended petition (filed in the MDL court).

original Petition, the Naval Equipment Manufacturers are "sued only for their **failure to warn** of the hazards of asbestos exposure, and are not sued on any other theory." (*Id.* at ¶20, emphasis added). Plaintiffs further allege that: "This failure to warn renders the Naval Equipment Manufacturers liable ... both in negligence, and in strict products liability for a marketing defect. Any and all theories alleged against any and all Defendants other than the above-named Naval Equipment Manufacturers are expressly and not alleged against the Naval Equipment Manufacturers." (*Id.*).

Crane removed Plaintiffs' state court Petition to this court invoking federal jurisdiction pursuant to 28 U.S.C. §1442(a)(1), commonly referred to as the Federal Officer Removal Statute.[5] While Plaintiffs make no allegations in their Original Petition that Terry Cardaro served in the Navy or was exposed to asbestos during any naval service, Crane states in its Removal that Terry Cardaro "allegedly joined the U.S. Navy in 1969 and served two four-year terms until 1977," and that during that period of time, he allegedly worked on numerous federal vessels as a welder, mechanic and/or tacker. (*See* Notice of Removal, §3(B) & (C)).

Crane further submits in its Removal that:

> This action involves a "person," Crane, acting
> under the authority [of] an officer of the

---

[5]     Crane did not remove the case on any other grounds.

> United States within the meaning of 28 U.S.C. §1442(a)(1)...
>
> Assuming *arguendo* that Crane failed to warn plaintiff of the hazards of asbestos exposure that plaintiff came into contact with during his work history on U.S. Navy ships and naval shipyards, and as a result, is responsible for his injuries, which is denied, that Crane ... has a federal defense to this action, i.e. government contractor immunity from liability arising from exposure to asbestos-related products aboard U.S. Navy vessels. A causal nexus exists between the injuries alleged to have been sustained by plaintiff and the responsibilities imposed on Crane under the strict supervision of officers of te United States government and in compliance with federal law.

(*Id*. at §4, citations omitted).

In its removal papers, Crane did not identify any specific product or equipment manufactured by Crane and supplied to the Navy. Crane also did not submit any supporting Affidavits with its initial removal papers. However, as discussed below, on August 10, 2010, when Crane filed its Reply Brief to Plaintiffs' Motion to Remand, Crane attached three affidavits in support of its removal.

In their Motion to Remand, Plaintiffs argue that the case should be remanded to state court because the court lacks subject matter jurisdiction. Plaintiffs reiterate that "[i]t is important to understand at the outset that the only claims being pursued against Crane are failure-to-warn claims." (Plaintiff's Motion to Remand, Doc. No. 35 at p. 2; Plaintiffs' Supp. Memo. in support of

Remand, Doc. No. 458 at p.2).

In its Reply to Plaintiffs' Motion to Remand, Crane states at te outset of its brief that "because many Defendants have been dismissed and based on other circumstances, Crane Co. **does not oppose** plaintiff's Motion to Remand." (Crane's Reply Brief, Doc. No. 467 at p. 1, emphasis added). At the end of its brief, Crane reiterates that "in light of the fact that plaintiffs are pursuing only a failure-to-warn claim against Crane Co., Crane Co. **does not oppose** plaintiff's Motion to Remand." (*Id*. at p. 4, emphasis added).

In spite of its no opposition position, Crane nevertheless also submits in its Reply Brief that its removal of the failure to warn claim against Crane on federal officer grounds is appropriate, and Crane submits for the first time three Affidavits in support of its removal. (*See* Affidavits of Anthony D. Pantaleoni, David P. Sargent, and Dr. Samuel Forman, attached as Exs. 1-3 to Crane's Reply Brief, Doc. No. 467). Crane also argues for the first time in its Reply Brief that this court has federal enclave jurisdiction. (Reply Brief, Doc. No. 467 at p. 4).

In its Opposition to Plaintiffs' Motion to Remand, Foster Wheeler (who was not added as a Defendant until Plaintiff's filed their First Amended Petition in the MDL court) argues that

Plaintiffs allege "uniquely federal claims" against Foster Wheeler and that Plaintiffs First Amended Petition "is now the jurisdictionally relevant complaint in this litigation." (Foster Wheeler's Opp., Doc. No. 468 at p. 6 of 24). Essentially, Foster Wheeler argues that Plaintiff's claims asserted against it (in Plaintiffs' First Amended Petition) are subject to Federal Enclave Jurisdiction, Federal Officer Jurisdiction, and admiralty jurisdiction. Foster Wheeler also submits that if this court finds that it lacks subject matter jurisdiction, the appropriate remedy would be dismissal, not remand, because the operative complaint against Foster Wheeler was filed in federal court. (*Id.* at page 7 of 24, at n. 1).

In its opposition to Plaintiffs' Motion to Remand, General Electric (who had originally joined in Crane's removal) argues that it (like Crane) is entitled to Federal Officer Jurisdiction. However, General Electric admits that Plaintiffs have not specified the factual circumstances of Terry Cardaro's alleged exposure to GE manufactured asbestos containing military products (Opp., Doc. No. 469 at p. 5), and General Electric submits no affidavits in support of federal officer jurisdiction. General Electric also argues that the court has federal enclave jurisdiction and admiralty jurisdiction.

As the court next discusses, the court finds that Crane's

8

removal under the Federal Officer Removal was improper. Further, Crane did not remove this matter on any other grounds, and its argument (raised for the first time in its Reply Brief filed on August 10, 2010) that the court has federal enclave jurisdiction is unavailing. Finally, the court rejects arguments made by Foster Wheeler and General Electric that removal, at this juncture, is proper.

## II. Legal Analysis

### A. No Federal Officer Jurisdiction

Pursuant to the Federal Officer Removal Statute, 28 U.S.C. §1442(a)(1),

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is presiding:
>
> (1) The United States or any agency thereof or any officer (or any acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. §1442(a)(1).

Removal pursuant to §1442(a)(1) is meant to "ensure a federal

forum in any case where a federal officer is entitled to raise a defense arising out of his official duties." *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5ᵗʰ Cir. 1998). However, the removing defendants have the burden of establishing the existence of federal jurisdiction. *Id.* at 397.

In considering whether removal was proper under 28 U.S.C. §1442(a)(1), the court must determine whether Crane, the removing defendant, has established the following factors:

(1) it is a "person" within the meaning of the statute;

(2) it acted under the direction of a federal officer and that it has demonstrated a causal nexus between Plaintiff's failure-to-warn claims and the acts it actions performed under the color of a federal officer; and

(3) it can raise a colorable federal defense to plaintiff's claims.

*Mesa v.* California, 489 U.S. 121, 124-25, 134-35, 109 S.Ct. 959, 962-63, 967-68, 103 L.Ed.2d 99 (1989); *Winters*, 149 F.3d at 398-400.

In this case, Plaintiffs do not dispute that Crane meets the **first prong** of the jurisdictional test, i.e., Crane is a "person" for purposes of removal under §1442. At issue are the other prongs of the jurisdictional test, i.e., whether Crane acted under the

10

direction of a federal officer and can establish a causal nexus between its actions under asserted federal authority and the Plaintiffs' claims for failure to warn (prong 2), and the existence of a colorable federal defense (prong 3).

**Second prong: Acting under the direction of a federal officer and causal nexus between plaintiffs' claims and Crane's actions performed under the color of a federal office? "No"**

In its Reply Brief, Crane argues that numerous courts have found removal under federal officer grounds was proper in the failure-to-warn context when evidence, such as Crane's Affidavits submitted with its Reply, were considered.[6]   In one affidavit, Anthony D. Pantaleoni, the Vice-President of Environment, Health and Safety for Crane, attest that Crane supplied equipment, including valves, for Navy ships under contracts between Crane and the Navy, and that all equipment supplied by Crane was built in accordance with Navy specifications.  (*See* Crane's Reply Brief,

---

[6]    In some cases where courts have found that removal was proper, Plaintiffs and/or removing Defendants confirmed manufacture of specific products installed on naval vessel on which Plaintiff worked.  *See e.g., Nesbiet v. General Electric Co.*, 399 F.Supp.2d 205 (S.D.N.Y. 2005)(asbestos used as insulation in marine steam turbines).; *Beckwith v. General Electric Co.*, 2010 WL 1287095 (D.Conn. 2010)(centrifugal pumps manufactured by Buffalo Pumps and marine steam turbines manufactured by GE).  Here, in their original petition that served as the basis for removal, Plaintiffs made no made specific allegations about a specific Crane product made for the Navy or that Plaintiff Terry Cardaro served/ worked for the Navy.  Further, in its removal papers, Crane is vague about any products it manufactured for the Navy, and Crane has moved for summary judgment arguing that "[d]uring discovery and depositions in this matter, Plaintiffs did not identify Crane Co. as the manufacturer or supplier of any asbestos-containing product to which Mr. Cardaro was exposed."  (Doc. No. 350 at p. 1).

Doc. No. 467, Exhibit 1, Pantaleoni Affidavit at ¶¶4 & 6).

In another of Crane's affidavits, David P. Sargent, Jr., a retired Rear Admiral of the United States Navy, attests in part that:

> 46. The Navy had precise specifications as the nature of any markings, communications or directions affixed to or made a part of any equipment supplied by manufacturers such as Crane Co. for ultimate use aboard Navy ships. Such Manufacturers would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of **warning** or caution statement to equipment intended for installation in a Navy ship, **beyond those specifically required by the Navy without prior discussion and expressed approval by the Navy.**

(*See* Crane's Reply Brief, Doc. No. 467, Exhibit 2, Sargent Affidavit at ¶46, emphasis added; *see also* ¶¶48 & 50).

In Crane's third Affidavit, Samuel A. Forman, M.D., a medical doctor in preventive and occupational medicine, attests to the state of knowledge and awareness regarding the hazards of asbestos, and he states in part that:

> In my research, I have not located a single instance in which the Navy, at any time relevant to this case, instructed or permitted a supplier of equipment, such as valves, to a vessel or facility to provide any asbestos-

related warning with its equipment.

(Doc. No. 467, Exhibit 3, Forman Affidavit at ¶23).

However, in their original state court Petition, Plaintiffs do not allege, and Crane does not submit (in its removal papers), that Terry Cardaro worked with any specific Crane product/valve while on board any Naval vessel.[7]  And even if Terry Cardaro worked with Crane products/valves on Naval vessels, the court finds that the fact that warnings on Naval equipment required prior approval by the Navy (as per the Sargent Affidavit) does not mean that Crane was either specifically mandated or prevented from giving adequate warnings about asbestos that was contained in products that it manufactured for the Navy.  Further, although Dr. Forman attests that he has not located any instance in which the Navy instructed or permitted a supplier of equipment to provide any asbestos-related warning with its equipment, there is no evidence that the Navy prevented Crane from complying with state-law duties to warn of the danger of asbestos contained in any product that Crane supplied to the Navy. *Cf. Winters v. Shamrock Chemical Co.*, 149 F.3d 387, 401 (5th Cir. 1998)(affirming denial of a motion to remand and stating that contractors hired to produce Agent Orange failed

---

[7]      As previously noted in footnote 6, Crane argues in its Motion for Summary Judgment (the hearing of which is presently stayed) that "[d]uring discovery and depositions in this matter, Plaintiffs did not identify Crane Co. as the manufacturer or supplier of any asbestos-containing product to which Mr. Cardaro was exposed."  (Doc. No. 350 at p. 1).

to put warnings on the product only because they "were specifically prohibited from placing any warnings on the finished product itself except as allowed by the contract").

Plaintiffs have also submitted evidence that the Navy expected manufacturers to supply warnings concerning hazardous substances in military equipment in accordance with state law. A memorandum dated September 1956 from the Office of the Secretary of the Navy regarding labeling of hazardous substances specifically states that warnings accompanying products manufactured for the Navy by contractors are "to be affixed by the manufacturer." (*See* Plaintiff's Supplemental Memo., Doc. No. 458, Ex. A). Further, the memorandum states that the content of such manufacturer warnings is to be "governed by State an Federal laws and regulations depending on the nature of the material and whether the shipment is interstate or intrastate." (*Id.*).[8]

Thus, the court cannot find a causal nexus between acts taken by Crane at the direction of the Navy and the failure to warn as alleged by Plaintiffs. For purposes of federal officer removal, Crane has not shown that the Navy required it to refrain from issuing warnings about the dangers of asbestos in any specific

---

[8] *See Hilbert v. Aeroquip*, 486 F.Supp. 2d 135, 141 (D.Mass.2007)(court granted motion to remand and discussed similar Navy manual wherein the Navy recognized that additional warnings as required by state and federal laws may be added to those required by its own regulations) ; *Glein v. Boeing Co.*, 2010 WL 2608284 (S.D.Ill.2010)(court granted motion to remand and discussed same Naval memo).

product it manufactured for the Navy and to which Plaintiff Terry Cardaro was exposed, or that any control the Navy may have had over warnings directly interfered with Crane's ability to fulfill its state-law obligation to warn of hazards associated with asbestos.[9]

**Third prong: Colorable Federal Defense?  "No"**

To the extent that Crane is asserting a "colorable federal defense," it is relying on the federal or military contractor defense as prescribed by the Supreme Court in *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442

---

[9]     As previously noted, Buffalo Pumps removed the underlying state  matter in a separate removal and was given Docket No. 05-2709 in this court.  (*See* fn. 2, *supra*).  The court dismissed No. 05-2709 as duplicative of No. 05-2684.  (*Id.*). While Plaintiffs did not file a motion to remand No. 05-2709 (which remains dismissed), the court finds that Buffalo Pumps' removal was also improperly removed under the Federal Officer Removal Statute and does not confer subject matter jurisdiction on this court.

        Buffalo Pumps attached supporting Affidavits to its Notice of Removal.  One of these Affidavits is that of Roger B. Horne, Jr., who attests that he is a retired Rear Admiral of the United States Navy, serving between 1956 and 1991.  According to Horne:

> A vendor such as Buffalo Pumps would not have been permitted (under either specifications or, as a matter of Navy practice) to attach any type of warning or cautionary statement not required or approved by the Navy, including statements related to asbestos, without prior discussion, approval and acceptance by the Navy.

(*See* Horne Affidavit at ¶¶12-13, attached to Buffalo Pumps' Removal in No. 05-2709).

        Such language is very similar to the language cited above from retried Rear Admiral Sargent's Affidavit submitted by Crane when it filed its Reply to Plaintiffs' Motion to Remand.  However, as the court found above, the fact that warnings on Naval equipment required prior approval by the Navy does not mean that an entity such as Buffalo Pumps was prevented from giving adequate warnings about asbestos that was contained in products that it manufactured for the Navy.  Further, as discussed in the text above, Plaintiffs have submitted a Naval memorandum which states that warnings accompanying products manufactured for the Navy by contractors are "to be affixed by the manufacturer," and that the content of such manufacturer warnings is to be "governed by State an Federal laws and regulations depending on the nature of the material and whether the shipment is interstate or intrastate." (*See* text p. 14, citing Ex. A to Plaintiffs' Supplemental Memo. in support of Motion to Remand, Doc. No. 458).

(1988).  Under certain conditions, this defense immunizes contractors who supply military equipment to the Government from the duties imposed by state tort law.  Such displacement of ordinary tort liability "occur[s] only where ... a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law....'" *Boyle* at 507, 108 S.Ct. at 2516 (citation omitted).

*Boyle* provides that government contractors are shielded from liability in state court for defects in products or equipment supplied to the United States only when:

(1)   the United States approved reasonably precise specifications;

(2)   the equipment conformed to those specifications; and

(3)   the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States.

*Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518.

At the outset, the court finds that asbestos insulation in and of itself does not represent military equipment entitling its manufacturers to the protections of the military contractor defense.  *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 812 (9th Cir. 1992).  Further, even if products containing asbestos insulation are considered military equipment, the court still finds

that here Crane has no colorable federal defense.[10]  Courts often

merge the acting under/causal relationship analysis discussed above

with a claim of common law government contractor defense as set

forth in *Boyle*.  Thus, for the same reasons set forth in the

preceding section, the court cannot find that the Navy approved

reasonably precise specifications that either mandated or prevented

Crane from complying with its state-law duty to warn for purposes

of the first prong of the *Boyle* standard.[11]

In the absence of evidence of a significant conflict between

a federal policy or interest and the operation of state law, such

as is required to implicate the government contractor defense, the

---

[10]    The court recognizes that *Mesa* only requires a "colorable" federal defense, but Crane has not met even that minimum standard.

[11]    In *McCormick v. C.E. Thurston & Sons, Inc.*, 977 F.Supp. 400 (E.D.Va. 1997), a former navy officer was allegedly exposed to asbestos while serving aboard the USS NIMITZ that was docked at the Norfolk Naval Base for at least part of his tour.  Suit was filed in state court against the distributor of asbestos products aboard the NIMITZ under a failure to warn claims. The defendant removed the case to federal court which subsequently granted the plaintiffs' motion to remand. In addition to finding that federal enclave jurisdiction was doubtful and could not support removal, the court also found that the Defendant had failed to demonstrate a colorable federal defense under *Boyle*. *Id*. at 402-03. The court pointed out that:

> in the thousands of asbestos cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contractor defense is not available in "failure to warn" cases.  Judge Miller set forth his ruling that the *Boyle* case did not apply in failure to warn cases back in October of 1988.  *See* Order dated October 19, 1988 from *Worley v. Celotex Corp.*, C.A. No. 88-243-N.  This position was subsequently adopted by the entire Court and incorporated into the Summary of Prior Rulings and Preservation of Objections Pertaining to Motions for Which Oral Argument is Waived.

*Id*. at 403.

court concludes that Crane has failed to proffer a colorable federal defense so as to permit removal pursuant to 28 U.S.C. §1442(a)(1). *Accord Weese v. Union Carbide Corp.*, 2007 WL 2908014 (S.D.Ill. 2007) (remanding case because no colorable federal defense that would permit federal officer removal).

## B.  Can Crane assert Federal Enclave Jurisdiction? "No"

In its Reply Brief, Crane submits that "Mr. Cardaro was allegedly exposed to asbestos at the Norfolk Naval Station at a time in which the Norfolk Naval Station was a federal enclave and accordingly federal jurisdiction is proper under Article I, Section 8, Clause 17 of the U.S. Constitution and 28 U.S.C. §1331(a)." (Doc. No. 467 at p. 4). However, Crane did not remove this matter on any other grounds except federal officer removal, and it cannot now base its removal jurisdiction on federal enclave jurisdiction. Further, there is nothing in Plaintiffs' originally filed state court petition that would serve as a basis for Crane removing this matter based on federal enclave jurisdiction.

## C.  Foster Wheeler has no standing at this juncture to contest removal.

Foster Wheeler was not added as a Defendant until the

Plaintiffs filed their First Amended Petition in the MDL court *after* the case was improvidently removed and *before* a ruling was made on Plaintiffs' timely filed Motion to Remand.  Because the court is granting Plaintiffs' Motion to Remand, Plaintiffs' First Amended Petition is improperly before this court.[12]  Thus, the court does not reach Foster Wheeler's arguments that the court may exercise Federal Officer Jurisdiction, Federal Enclave Jurisdiction or Admiralty Jurisdiction.[13]

## D.  General Electric's opposition to remand has no merit.

Again, for the reasons set forth in the preceding section, the court's subject matter jurisdiction depends on the Plaintiff's original state court petition (improperly removed to this court), and <u>not</u> on Plaintiff's First Amended Petition (filed in the MDL court after removal and before a ruling on Plaintiffs' Motion to

---

[12]     Foster Wheeler argues that although the court's jurisdiction is normally analyzed on the basis of the pleadings filed at the time of removal (here, the original state court Petition), Foster Wheeler submits that because Plaintiffs filed an Amended Petition in the MDL court (after removal), the court must ask whether the amended complaint gives rise to a viable claim of federal subject matter jurisdiction.  However, in the cases cited by Foster Wheeler in support of this argument, the plaintiff amended his complaint *after* his motion for remand had been denied (*see e.g., Akin v. Ashland Chemical Co.*, 156 F.3d 1030 (10th Cir. 1998), or plaintiff had not contested removal (*see e.g., Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49 (2nd Cir. 1996) , or plaintiff had amended his complaint *before* filing a motion to remand (*see e.g., Moffitt v. Residential Fundig Co.*, 604 F.3d 156, 159 (4th Cir. 2010).  Here, Plaintiffs filed their amended petition after filing a motion to remand, but before a ruling was made on this motion.

[13]     The court notes that in support of its argument that the court may exercise Federal Officer Jurisdiction, Foster Wheeler has submitted with its Opposition to Plaintiffs' Motion to Remand, the Affidavits of Retires Admiral Benjamin Lehman and Thomas Schroppe, a former engineer with Foster Wheeler.  However, both of these affidavits appear to be prepared for another case in which Foster Wheeler was the removing defendant.

Remand).  Further, while General Electric now argues that it is entitled to Federal Officer Jurisdiction (as did Crane in its removal), General Electric offers no affidavits in support of federal officer jurisdiction, and General Electric admits that "Plaintiffs have not specified the factual circumstances of Terry Cardaro's alleged exposure to GE manufactured asbestos containing military products."  (Doc. No. 469 at p. 5).[14]  Thus, the court finds no federal officer jurisdiction as to General Electric. Finally, because Crane removed this case solely on the basis of Federal Officer Jurisdiction, the court does not consider General Electric's arguments that the court has Federal Enclave Jurisdiction or Admiralty Jurisdiction.

## III.  Conclusion

The court concludes that this matter was improperly removed pursuant to §1442(a)(1) and remand is required for lack of subject matter jurisdiction.

Accordingly,

---

[14]    Again, in their original Petition, Plaintiffs make no allegation that Plaintiff Terry Cardaro served in the Navy or was exposed to asbestos while in Naval service.  Further, the court notes that in its Motion for Summary Judgment (Doc. No. 357), General Electric argues that there is no evidence that Terry Cardaro was exposed to asbestos associated with products manufactured by General Electric for the Navy. Plaintiffs did not file an opposition to this argument, but instead seek to add additional claims against General Electric as a land based manufacturer through their proposed Second Amended "Petition", which is the subject of Plaintiffs' Motion for Leave to File Second Amended Pleading (Doc. No. 359).  Both General Electric's Motion for Summary Judgment and Plaintiff's Motion for Leave to File Second Amended Pleading have been stayed.  (*See* fn. 2, *supra*).

**IT IS ORDERED** that Plaintiffs' **"Motion to Remand"** be and is hereby **GRANTED** for lack of subject matter jurisdiction, and the case is **REMANDED** to the Civil District Court for the Parish of Orleans, State of Louisiana.

**IT IS FURTHER ORDERED** that all prior rulings made by this court, including but not limited to the Magistrate Judge's Order (Doc. No. 438) granting the Plaintiffs' Motion to Compel Against General Electric Company and for Costs, be and are hereby **VACATED** in toto because the court lacked subject matter jurisdiction when those rulings were rendered;

**IT IS FURTHER ORDERED** that General Electric Company's Rule 72 Objection (Doc. No. 460) to the Magistrate Judge's Order (Doc. No. 438) be and is hereby **DISMISSED AS MOOT**;

**IT IS FURTHER ORDERED** that all prior dismissals of defendants, through summary judgment rulings or voluntary dismissals by Plaintiffs, be and are hereby **VACATED** because the court lacked subject matter jurisdiction when those rulings or dismissals were entered.

New Orleans, Louisiana, this **27th** day of **August, 2010**.

_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE